# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE CORPES,

     Plaintiff,

     v.

WALSH CONSTRUCTION COMPANY,

     Defendant.

No. 3:14-CV-181 (MPS)

## MEMORANDUM OF DECISION

## I.    INTRODUCTION

Diane Ceruti ("Ceruti" or "Plaintiff"), has sued Walsh Construction Company ("Walsh" or "Defendant"), for wrongful termination. Specifically, Ceruti claims that Walsh wrongfully terminated her employment as a Payroll Coordinator/Administrative Assistant because she complained to her supervisor that Walsh's payroll practices illegally failed to track the hours worked by construction laborers, and resulted in denying them overtime payments for hours worked in excess of 40 hours per week.[1] An employer in Connecticut may generally terminate an individual's employment at will, but Ceruti's wrongful termination claim invokes a narrow exception to this rule, recognized by Connecticut common law, for terminations that violate some public policy and for which the employee would otherwise have no remedy. Walsh moves to dismiss the claim, arguing that Ceruti has alternative statutory remedies to contest her termination. A recent Second Circuit case shows that Walsh is correct. The Court of Appeals recently held that the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), prohibits discharging an employee for making internal complaints to an

---

[1] Ceruti's case is one of five employment cases brought against Walsh and consolidated under the name of the lead case, *Corpes v. Walsh Constr. Co.,* 3:14-cv-181 (MPS). (ECF No. 33.)

employer about violations of the FLSA. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015). *Greathouse* makes clear that Ceruti may bring an anti-retaliation claim under the FLSA for her termination as a result of complaining to her employer about payroll violations. And the language of the FLSA anti-retaliation provision itself, which, *Greathouse* confirms, is to be construed broadly to effectuate its remedial purpose, demonstrates that it embraces Ceruti's complaints, even though they related to the pay of others and not herself. Thus, because Ceruti has an alternative statutory remedy, her common-law claim must be dismissed.

Nonetheless, because *Greathouse*, which was decided after briefing of Walsh's motion was completed, overruled an earlier Second Circuit precedent holding that the FLSA's anti-retaliation provision did <u>not</u> apply to internal company complaints, it appears that Ceruti was not on notice that she had an alternative statutory remedy when she was terminated and when she brought this action. Therefore, the Court will give her an opportunity to amend her complaint to plead an FLSA retaliation claim.

As discussed in detail below, the Court GRANTS Defendant's renewed motion to dismiss (ECF No. 62) and DENIES as moot Plaintiff's motion for leave to file a sur-reply brief. (ECF No. 69.)

## II.    <u>BACKGROUND</u>

Ceruti began working for Walsh on or about August 29, 2011, in its New Haven and Milford, Connecticut offices. (Am. Compl., ECF No. 60 ¶ 4.) Ceruti worked full-time for Walsh as a Payroll Coordinator/Administrative Assistant for the Moses Wheeler bridge project. (*Id.* ¶¶ 4, 7.) Her duties included entering payroll data into Walsh's system, working with purchase orders, and processing new hires, layoffs, and payroll. (*Id.* ¶ 5.)

Ceruti soon discovered "discrepancies between the hours laborers reported to her that they actually worked and those that appeared on the foremen's daily sheets." (*Id.* ¶ 11.) Ceruti told the foreperson, Marie DiBenedetto ("DiBenedetto"), "that she was being given the wrong hours for the laborers," and that "this was not right." (*Id.* ¶ 12.) Ceruti also told DiBenedetto and her supervisor, James Doyle ("Doyle"), of her "desire to run a 'perfect payroll' each week, but she was told that would never happen." (*Id.*) The foreperson and Doyle did not address Ceruti's concerns, and the "laborers often were not paid overtime for hours [they] worked in excess of 40 per week." (*Id.* ¶ 13.) Ceruti alleges that she told Doyle about these overtime violations and questioned the legality of Walsh's payroll practices. (*Id.* ¶¶ 14, 15.) She told Doyle, "[t]his isn't right. If they work the hours they have to be paid the hours," and "[t]hey have to be paid properly." (*Id.* ¶ 15.) "She further told Doyle that she wanted to run one payroll and have it correct." (*Id.*) Nevertheless, Ceruti alleges that Walsh continued the same payroll practices, and her supervisors "would often avoid signing and authorizing the payroll figures," and instructed her "to run the payroll without the authorizations she had previously been instructed as being required to run payroll."[2] (*Id.* ¶ 16.)

The Amended Complaint states that on October 27, 2011—apparently within two weeks of these events—Doyle and another Walsh supervisor terminated Ceruti's employment, ostensibly because she was not conforming to Walsh's procedures concerning payroll. (*Id.* ¶ 17.)

Ceruti brought this action in Connecticut Superior Court, and Walsh removed it to this Court on October 28, 2014. (*See Ceruti v. Walsh Constr. Co.,* 3:14-cv-01593 (MPS), ECF No. 1.) The case was consolidated with several others under *Corpes v. Walsh Constr. Co.,* 3:14-cv-181 (MPS) on October 15, 2014. (ECF No. 33.) On October 24, 2014, the Court dismissed

---

[2] The Amended Complaint does not clarify what it means to run a "perfect payroll," nor does it explain the significance of running a payroll without certain "authorizations."

plaintiff Jose Corpes's claim for common law wrongful discharge in violation of public policy, in which he alleged that he was wrongfully discharged in retaliation for complaining to his supervisor about Walsh's failure to pay him for overtime work. (*see* ECF No. 46, "Corpes Ruling.") Ceruti, along with several other Walsh employees, has also filed a related action under the Connecticut Minimum Wage Act ("CMWA") and the FLSA, *Alicen Alicea, et al. v. Walsh Construction Company,* Civil Action No. 3:13-cv-00102 (MPS) (the "FLSA Action"), to recover overtime pay owed, but never paid because of Walsh's allegedly improper timekeeping procedures. Ceruti asserts, however, that she did not discover the overtime violations in her own case until after she was terminated, and the Amended Complaint alleges that her complaints to her supervisors about payroll practices related solely to the pay of other employees. (Am. Compl. ¶ 18; Pl.'s Opp. Br. at 7.)

## III.   <u>STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). In evaluating a motion to dismiss, the Court accepts as true all of the complaint's factual, non-conclusory allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

## IV.   <u>DISCUSSION</u>

### A.  **Wrongful Discharge in Violation of Public Policy**

To state a claim for wrongful discharge in violation of public policy, a plaintiff must plead that the alleged conduct contravenes an important public policy, and demonstrate that she is "*otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." *Burnham v. Karl & Gelb, P.C.,* 252 Conn. 153, 159-60 (2000) (internal quotation marks omitted). Connecticut courts emphasize that "the public policy exception to the at-will employment doctrine is a narrow one," and courts "do not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 802-03 (1999) (internal quotation marks omitted). "Absent unusual circumstances, [courts] will interfere with a personnel decision only if it implicates an explicit statutory or constitutional provision, or judicially conceived notion of public policy." *Id.* at 803. "So long as the plaintiff has a remedy available under either state or federal law which serves to protect the public policy alleged to have been violated, the common-law cause of action for wrongful discharge is precluded." *Honeck v. Nicolock Paving Stones of New England, LLC*, No. CIV.3:04CV1577 (JBA), 2005 WL 1388736, at *2 (D. Conn. June 10, 2005).

Ceruti has an alternative statutory remedy for her allegedly retaliatory termination, and thus may not press her common law wrongful termination claim. Both the FLSA and the CMWA require that employers pay their employees at one and one-half times their regular rates of pay for each hour they work in excess of 40 hours in one work week. 29 U.S.C. § 207(a)(1); Conn. Gen. Stat. §§ 31-76b and 31-76c. The FLSA provides that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an

industry committee." 29 U.S.C. § 215(a)(3). In *Greathouse,* the Second Circuit concluded that "an employee may premise a section 215(a)(3) retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse,* 784 F.3d at 107 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011)). In doing so, the Second Circuit overruled its earlier precedent in *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993), which had required "an employee to have filed a complaint with a government agency as a predicate for an FLSA retaliation claim." *Greathouse*, 784 F.3d at 107.

In this case, Ceruti's complaint to her supervisors was, as alleged, "sufficiently clear and detailed." *Greathouse*, 784 F.3d at 116. Ceruti alleges that, two weeks before Walsh terminated her employment, Ceruti told the foreperson, "that she was being given the wrong hours for the laborers," and that "this was not right." (Am. Compl. ¶ 12.) Ceruti also alleges that she told her supervisor that the laborers were often not paid overtime for hours they worked in excess of 40 per week, and she questioned the legality of Walsh's payroll practices. (*Id.* ¶¶ 14, 15.) Ceruti told her supervisor, "[t]his isn't right. If they work the hours they have to be paid the hours," and "[t]hey have to be paid properly." (*Id.* ¶ 15.) These comments identified the particular employees (laborers) for whom Ceruti was asserting FLSA rights, and they identified the type of rights she was exercising (FLSA overtime rights). She also questioned the legality of Walsh's practices, and explained that she was being given the wrong hours for the laborers. Thus, while Ceruti may not have specifically invoked the FLSA or Connecticut wage statutes, her statements to her supervisor were sufficient to give Walsh fair notice that she was asserting violations of statutory rights under the FLSA. *Kasten,* 131 S. Ct. at 1334 (agreeing that "a complaint is filed when a

reasonable, objective person would have understood the employee to have put the employer on notice that [the] employee is asserting statutory rights under the [FLSA]" (internal citations omitted)); *Trowbridge v. Wernicki*, No. 3:13-CV-01797 JAM, 2015 WL 3746346, at *5 (D. Conn. June 15, 2015) (plaintiff's "numerous verbal complaints to [his employer] regarding non-payment of work hours . . . were sufficiently definite to put defendants on notice that he was asserting his rights under the FLSA").

Although *Greathouse* did not discuss whether the FLSA anti-retaliation provision encompasses complaints—like Ceruti's—that are made on behalf of other employees only, the language in the statute prohibiting employers from discharging "any employee because such employee has filed *any complaint* . . . under or *related to this chapter* . . . ." 29 U.S.C. § 215(a)(3) (emphasis added), is sufficiently broad to cover complaints about FLSA violations against others. The FLSA anti-retaliation provision also expressly covers employees who testify as witnesses in FLSA-related proceedings—demonstrating Congressional intent to protect employees who are supporting the claims of employees other than themselves.

Further, similar language in the Supreme Court's decision in *Kasten,* on which *Greathouse* relies, emphasizes that the "any complaint" language in the FLSA's anti-retaliation provision should be interpreted broadly to fulfill the statute's remedial purpose. Congress enacted the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), to "prevent[] fear of economic retaliation from inducing workers quietly to accept substandard conditions." *Kasten*, 131 S. Ct. at 1333 (internal quotation marks omitted). The Second Circuit, too, has "repeatedly affirmed that the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathouse*, 784 F.3d at 113-14 (internal quotation marks omitted).

Connecticut wage protection statutes would likely also provide a remedy for Ceruti, at least after the Second Circuit's decision in *Greathouse.* Conn. Gen. Stat. § 31-69b(a) provides that: "[a]n employer shall not discharge, discipline, penalize or in any manner discriminate against any employee because the employee has filed a claim or instituted or caused to be instituted any investigation or proceeding under . . . this chapter [558 Wages], or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by . . . this chapter."[3] "The Connecticut Supreme Court has made it clear that, when interpreting the CMWA, Connecticut courts rely on federal precedent interpreting analogous provisions of the FLSA." *Perkins v. S. New England Tel. Co.*, No. 3:07-CV-967 JCH, 2011 WL 2173701, at *3 (D. Conn. June 1, 2011) (citing *Roto–Rooter Services Co. v. Dep't of Labor,* 219 Conn. 520, 593 A.2d 1386 n. 8 (1991)). This suggests that Connecticut courts would likely follow *Greathouse* when interpreting Conn. Gen. Stat. § 31-69b(a) with regard to internal complaints. Moreover, the Connecticut statute *expressly* protects employees who are discharged because they exercised wage rights "on behalf of [themselves] *or others*." Conn. Gen. Stat. § 31-69b(a) (emphasis added). Ceruti would thus likely also have an alternative statutory remedy under the CMWA.[4]

---

[3] The Connecticut statute refers to filing a "claim" rather than a "complaint."

[4] Conn. Gen. Stat. § 31-69b(b) describes the remedy available for violations of subsection (a):

> Any employee who believes that he has been discharged, disciplined, penalized or otherwise discriminated against by any person in violation of this section may file a complaint with the Labor Commissioner alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the commissioner shall hold a hearing. . . . The commissioner may award the employee all appropriate relief including rehiring or reinstatement to his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discharged, disciplined, penalized or discriminated against. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees and costs. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court . . . .

Because Ceruti has an alternative statutory remedy under the FLSA and possibly also the CMWA, Ceruti's claim for wrongful termination in violation of public policy is precluded, and the Court GRANTS Walsh's motion to dismiss Ceruti's claim.

### B.  Amending the Complaint

When Ceruti was terminated, in 2011, the law in this Circuit was that an employee could not bring an FLSA retaliation claim for complaints made only to an employer, as opposed to those made to a government agency. *Lambert,* 10 F.3d at 55. Thus, the alternative statutory remedy recognized in *Greathouse* did not exist, and the Court is not persuaded that any other statute provided Ceruti with a remedy for protesting FLSA violations *against others*. Further, it appears that she cannot now bring an FLSA retaliation claim. The statute of limitations for FLSA claims, including claims brought under the anti-retaliation provisions, is two years for non-willful violations and three years for willful violations. 29 U.S.C. § 255(a). *See Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 938 F.2d 797, 801 (7th Cir. 1991) (holding "that the statute of limitations of § 255 of the FLSA applies to private actions under § 216(b) for violations of § 215(a)(3)"); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 529, 535 (S.D.N.Y. 2014) (applying § 255 of the FLSA to plaintiff's FLSA retaliation claim). Because she was not on notice that she could bring an FLSA retaliation claim and because the statute of limitations likely has already run on that claim, the Court will allow Ceruti to amend her complaint to plead an FLSA retaliation claim. This ruling is without prejudice to Walsh's filing a dispositive motion on statute of limitations grounds based on an argument that, for reasons that are unknown to the Court at this time, the FLSA retaliation claim should not relate back.

### C.  Motion for Leave to File Sur-reply

In its reply brief, Walsh raised several arguments for the first time, including the possibility that Ceruti might also have a remedy under Conn. Gen. Stat. § 31-51q, which prohibits retaliatory terminations on account of the exercise of free speech rights. Because such arguments had not been raised previously, Ceruti moved to file a sur-reply to address these issues. Because raising new arguments for the first time in a reply brief is improper, the Court will not consider these issues and Ceruti's motion to file a sur-reply (ECF No. 69) is denied as moot. *See* Conn. L. Civ. R. 7(d) (reply briefs "must be strictly confined to a discussion of matters raised by the responsive brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.")).

## V.   <u>CONCLUSION</u>

For foregoing reasons, the Court GRANTS Defendant's renewed motion to dismiss (ECF No. 62) and DENIES as moot Plaintiff's motion for leave to file a sur-reply brief. (ECF No. 69.)

The stay on discovery is hereby lifted. The parties shall have 21 days to file a joint proposed case management plan addressing the time for discovery and any dispositive motions. If they cannot reach an agreement, they may file separate plans.

Should Ceruti wish to amend her complaint to plead an FLSA retaliation claim, she must file her amended complaint within 21 days. These deadlines will not be extended.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            September 14, 2015